IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| LOBERG EXCAVATING, INC., <br><br> Plaintiff, <br><br> v. <br><br> THE CINCINNATI INSURANCE COMPANY <br><br> Defendant. | Case No. 3:21-cv-50263 <br><br> Honorable Iain D. Johnston |

**MEMORANDUM OPINION AND ORDER**

In this insurance dispute, Plaintiff Loberg Excavating, Inc. ("Loberg") and Defendant The Cincinnati Insurance Company ("Cincinnati") contest whether Cincinnati owes Loberg a defense. Dkts. 39, 44, 46. Loberg and Cincinnati filed cross-motions for summary judgment, and Intervenor Plaintiff Allied Property and Casualty Insurance Company's ("Allied") filed a motion for summary judgment. Dkts. 38, 43, 46.

As discussed below, one of the necessary prerequisites for Cincinnati to owe Loberg a defense is a "written contract or agreement" requiring Loberg to be added as an additional insured under Cincinnati's insurance policy. *Id.* Dkt. 53, at ¶ 68. Because no such contract or agreement exists, there is no genuine dispute of material fact as to whether Cincinnati owes Loberg a defense. Fed. R. Civ. P. 56(a). It does not. Because Loberg fails to satisfy this prerequisite, the Court need not address the others.

1

Accordingly, Cincinnati's motion for summary judgment is granted. Dkt. 38. Loberg's and Allied's motions for summary judgment are denied. Dkts. 43, 46. It follows that Loberg's and Allied's requests for a declaratory judgment and other relief are also denied. Compl., Dkt. 1; Intervenor Compl., Dkt. 35.

## BACKGROUND

The following facts are undisputed, except where noted. In March 2017, Devansoy, Inc. ("Devansoy") and Loberg entered a "Waste Storage Lagoon Expansion Agreement" for the "provision of materials and labor necessary to complete a waste lagoon expansion" (the "Project"). Dkt. 53, at ¶ 15. In November 2017, Loberg subcontracted with Yunker Plastics, Inc. ("Yunker") for Yunker "to supply certain goods and perform certain services, including supplying and installing the liner and ventilation system" for the Project (the "Subcontract"). *Id.* at ¶¶ 2, 4. The installation did not go according to plan, and Devansoy filed a multi-count lawsuit (the "Underlying Action") against Loberg. *Id.* at ¶¶ 17–45. Staring down the Underlying Action, Loberg turned to Yunker's insurer, Cincinnati, to defend Loberg. *Id.* at ¶ 1, 58–59.

Loberg did so because Cincinnati had previously issued Yunker a "Commercial General Liability Policy" (the "Policy"). *Id.* at ¶ 58. The Policy provides, in part, that Cincinnati "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. [Cincinnati] will have the right and duty to defend the insured against any 'suit' seeking those damages." *Id.* at ¶ 64. The Policy also contains an "Automatic

2

Additional Insured" provision that, if satisfied, would extend this coverage to Loberg. *Id.* at ¶¶ 64, 68.

For Loberg to be considered an Automatic Additional Insured—and to be entitled to a defense from Cincinnati—the Policy provides, and the parties agree, that Loberg must satisfy a host of prerequisites, including clearing a contractual requirement. *Id.* at ¶¶ 68, 71.

Specifically, the Policy provides that an "Additional Insured" will include, in relevant part, "[a]ny person or organization" whom Yunker is required to "add as an additional insured under this Coverage Part by reason of," as relevant to this dispute, a "written contract or agreement." *Id.* at ¶ 68.

The parties focus on a universe of four documents in arguing whether such a "written contract or agreement" exists. *Id.* First comes what Cincinnati calls a mere "transmittal sheet" and what Loberg calls a contractually-binding "instructions page." *See, e.g.*, Dkts. 39, at 15; 44, at 8. The Court will refer to this document as the "Lead Document." The Lead Document asks Yunker to "submit a certificate of insurance" that "must list Loberg Excavating, Inc. as additional insured . . . for both commercial general liability and automotive liability per our insurance company." Dkt. 53, at ¶ 57. The Lead Document also instructs Yunker to "read the enclosed contract" and "return the contract" to Loberg. *Id.* at ¶ 56. The Lead Document is not labeled with a page number. Dkt. 53, at ¶ 54. The parties agree that any obligation to add Loberg as an additional insured would be based on the interpretation of this page. *See* Dkts. 44, at 8–10; 50, at 2–6.

3

Next comes the "Subcontract Work Order," which is labeled as "Page 1 of 3." Dkts. 45-1, at 3; 49, at 2. The Subcontract Work Order describes the work that Yunker was to undertake. *Id*. This page also includes boxes for Loberg and Yunker to indicate their assent. *Id*. Specifically, Loberg is asked to assent to the "foregoing terms, specifications, and the conditions listed on the following two pages of this Work Order." *Id*. Similarly, Yunker is asked to assent to the "foregoing terms and specifications and the conditions listed on the following two pages of this Work Order." *Id*.

"Page 2 of 3" is the "General Conditions" page. Dkts. 45-1, at 4; 49, at 2. The only mention of insurance on the General Conditions page is that "[b]efore commencing work," Yunker "shall furnish Certificate of Insurance showing that Workmen's Compensation and Public Liability Insurance are in full force and effect." *Id*.

Lastly comes the "Indemnification" page, labeled "Page 3 of 3." Dkts. 45-1, at 5; 49, at 2. The Indemnification page includes a broad indemnification clause requiring Yunker, the "Subcontractor," to hold Loberg, the "Contractor," harmless for any claims and related liabilities and expenses arising from Yunker's work under the Subcontract. *Id*.

**PROCEDURAL POSTURE**

On July 2, 2021, Loberg sued Cincinnati, seeking a declaratory judgment that Cincinnati "owes Loberg a defense for the Underlying [Action] because Loberg qualifies as an additional insured on the policy for the allegations within the

4

operative complaint in the Underlying [Action] and because the terms of the additional insured endorsement do not preclude the possibility of coverage for Loberg." Compl., Dkt. 1, at ¶ 26.

On June 27, 2022, Loberg's insurer, Allied, which is defending Loberg in the Underlying Action, intervened in this suit and filed an intervenor complaint against Cincinnati. Dkts. 35, 36.

Allied seeks a declaratory judgment that Cincinnati owes Loberg a "primary and noncontributory duty to defend Loberg in the Underlying Action", and, because Allied "provides excess coverage to Loberg in the Underlying Action," and Cincinnati's policy provides primary coverage, Cincinnati must reimburse Allied for "all defense fees and costs that Allied paid on behalf of Loberg in the Underlying Action." Intervenor Compl., Dkt. 35, at ¶ 1. Alternatively, if the Court were to find that Allied and Cincinnati both "owe a co-primary duty to defend Loberg in the Underlying Action," Allied asks the Court for "equitable contribution" from Cincinnati of one-half of the fees and costs that Allied has spent defending Loberg. *Id.* Allied also seeks a declaration that Cincinnati "owes a duty to pay one-half of those fees and costs on a going forward basis." *Id.* Like Loberg's complaint against Cincinnati, Allied's intervenor complaint turns on whether Cincinnati owes Loberg a defense under the Policy. *See id.*

5

Loberg, Cincinnati, and Allied each move for summary judgment on whether Cincinnati owes Loberg a defense.[1] Dkt. 38, 43, 46.

## STANDARD OF REVIEW

Summary judgment is appropriate when there are no genuine disputes of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The party seeking summary judgment has the initial burden of establishing that there are no genuine disputes as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

In considering cross-motions for summary judgment, the Court must construe all inferences in favor of the party against whom the motion under consideration is made. *Allen v. City of Chi.*, 351 F.3d 306, 311 (7th Cir. 2003).

Summary judgment is a particularly appropriate mechanism for resolving cases involving the interpretation of written contracts. *Int'l Union of United Auto., Aerospace and Agric. Implement Workers of Am. v. Rockford Powertrain, Inc.*, 350 F.3d 698, 703 (7th Cir. 2003) (internal quotations and citation omitted). "Because contracts are interpreted as a matter of law, claims that turn on the interpretation and construction of a contract, rather than on disputed material facts, are suitable

---

[1] Allied "joins and adopts" Loberg's Motion for Summary Judgment and Loberg's Statement of Undisputed Material Facts. Dkt. 46, at 3. References to Loberg's arguments should be construed as applying to Allied's arguments, as well.

6

for resolution on a motion for summary judgment." *W. Bend Mut. Ins. Co. v. Procaccio Painting & Drywall Co., Inc.*, 928 F. Supp. 2d. 976, 981 (N.D. Ill. 2013).

## ANALYSIS

Loberg and Cincinnati begin by making much ado over whether the Court should apply Illinois or Wisconsin law. Dkts. 39, at 8–10; 52, at 2–8. But a "choice of law determination is required only when a difference in law will make a difference in the outcome." *Townsend v. Sears, Roebuck & Co.*, 879 N.E.2d 893, 898 (Ill. 2007). As discussed below, under both Illinois and Wisconsin law, Loberg fails to clear the contractual hurdle, at a minimum. Thus, Cincinnati is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

With respect to the contractual hurdle, Loberg and Cincinnati first contest whether the Lead Document is part of the Subcontract. Assuming the Lead Document were part of the Subcontract, they then dispute whether the Lead Document obligates Yunker to add Loberg as an additional insured under the Policy.

A court's "primary objective" in interpreting a contract is to "ascertain and give effect to the parties' intentions as expressed in" the contract's language. *W. Bend Mut. Ins. Co. v. Athens Const. Co.*, 29 N.E.3d 636, 645 (Ill. App. Ct. 2015); *see Tufail v. Midwest Hosp., LLC*, 833 N.W.2d 586, 592 (Wis. 2013). The "best indication of the parties' intent is the language of the contract itself." *Town Bank v. City Real Estate Dev., LLC*, 793 N.W.2d 476, 484 (Wis. 2010); *see Gallagher v. Lenart*, 874 N.E.2d 43, 58 (Ill. 2007). "Where the terms of a contract are clear and unambiguous, we construe the contract according to its literal terms." *Tufail*, 833 N.W.2d at 592; *see W. Bend*

7

*Mut. Ins. Co.*, 29 N.E.3d at 645 (noting that unambiguous terms are "applied as written"). "If the contract is unambiguous, our attempt to determine the parties' intent ends with the four corners of the contract, without consideration of extrinsic evidence." *Town Bank*, 793 N.W.2d at 484 (internal quotations and citation omitted); *see Spectramed Inc. v. Gould Inc.*, 710 N.E.2d 1, 6 (Ill Ct. App. 1998).

Courts apply these principles to construct insurance policies and determine the rights and responsibilities thereunder. *See W. Bend Mut. Ins. Co.*, 29 N.E.3d at 645; *Hirschhorn v. Auto-Owners Ins. Co.*, 809 N.W.2d 529, 534 (Wis. 2012).

Applying these principles, the Lead Document is not part of the Subcontract. And the Lead Document is the only possible contractual source requiring coverage for Loberg under the Policy.

The Lead Document, which does not include a page number, instructs Yunker to "read the *enclosed contract*," obtain a signature, and "return *the contract*" to Loberg. Dkt. 53, at ¶¶ 54, 56 (emphasis added). By the Lead Document's own terms, the "enclosed contract" is separate and distinct document. *Id.*

What's more, the three pages of the "enclosed contract" are aptly numbered "1 of 3," "2 of 3," and "3 of 3." Dkts. 45-1, at 3–5; 49, at 2. If the Lead Document were part of the Subcontract, the total number of pages would have been four.

Turning to the Subcontract itself, page "1 of 3" is labelled "Subcontract Work Order." Dkts. 45-1, at 3; 49, at 2. It includes designated boxes at the bottom of the page for Loberg and Yunker to sign. *Id.* Loberg's box asks Loberg to assent to "[t]he foregoing terms, specifications, and the conditions listed on *the following two pages*

8

*of this Work Order . . . .*" *Id.* Yunker's box asks Yunker to assent to "the foregoing terms and specifications and the conditions listed on *the following two pages of this Work Order.*" *Id.* (emphasis added). The word "foregoing" does not reach into the ether to draw in everything before it. Rather, the ordinary meaning of the unambiguous assent clauses dictates that "foregoing" applies only to the terms listed above the signature blocks on the Subcontract Work Order. *Thompson v. Gordon*, 948 N.E.2d 39, 47 (Ill. 2011) ("If the words in the contract are clear and unambiguous, they must be given their plain, ordinary and popular meaning."); *Folkman v. Quamme*, 665 N.W.2d 857, 865 (Wis. 2003) (noting that language in a contract "is given its common, ordinary meaning") (citation omitted). With that, Loberg and Yunker have only assented to the "Work Order" and the following two pages.

Flip to the next page. Page "2 of 3," the "General Conditions" page, includes a provision that requires Yunker to "furnish Certificate of Insurance showing that Workmen's Compensation and Public Liability Insurance are in full force and effect." Dkts. 45-1, at 4; 49, at 2. Logically, any agreed-upon provision concerning an additional Certificate of Insurance or provisions concerning additional insureds would be included in this paragraph or the paragraphs surrounding it. But the General Conditions make absolutely no mention of a requirement that Yunker add Loberg as an additional insured to the Policy. *Id.* A provision of such import—if agreed upon—would have been included in the General Condition alongside all the other material terms of the contract. *See Cage v. Harper*, 42 F.4th 734, 739 (7th Cir. 2022) (quoting *Holmes v. Godinez*, 991 F.3d 775, 780 (7th Cir. 2021)) ("Illinois law

9

imposes a strong presumption against provisions that easily could have been included in the contract but were not."); *Marion v. Orson's Camera Ctrs., Inc.*, 138 N.W.2d 733, 736 (Wis. 1966) (holding that a court's role is "not to make contracts or to reform them, but to determine what the parties contracted to do") (internal quotations and citation omitted).

Accordingly, the Lead Document is not part of the Subcontract. Having failed to satisfy this necessary step to being owed a defense, Loberg cannot succeed and this Court's analysis need not go further.

## CONCLUSION

For the reasons stated, Loberg's and Allied's motions for summary judgment are denied. Dkts. 43, 46. Cincinnati's motion for summary judgment is granted. Dkt. 38.

Consistent therewith, Loberg's and Allied's requests for a declaratory judgment are denied. Compl., Dkt. 1; Intervenor Compl., Dkt. 35. All claims against all parties having been resolved, this civil case is terminated.

Date: January 25, 2023

_____
Honorable Iain D. Johnston
United States District Judge